## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIELLE SMITH<br><br>Plaintiff,<br><br>vs.<br><br>NORTHEASTERN SCHOOL DISTRICT, DELLA ARCHER, TIM DAMON, SHAUN GOODMAN, SHAUN WILSON, and RYAN BRICE,<br><br>Defendants. | Case No.<br><br>Hon. |

## <u>COMPLAINT</u>

Danielle Smith ("Plaintiff") moves the Court for entry of judgment in her favor against named Defendants and in support of such Complaint avers as follows:

## <u>PRELIMINARY STATEMENT</u>

This is a civil rights action in which the Plaintiff seeks relief for the Defendants' violation of her rights secured by the Civil Rights Act of 1871, 42 U.S.C § 1983, and rights secured by the Fourth and Fourteenth Amendments to the United States Constitution. Further, the Plaintiff seeks relief for violations of the Americans with Disabilities Act ("ADA") as per a claim of hostile work environment. The Plaintiff seeks damages, compensatory and punitive, affirmative, and equitable

1

relief, and award of costs, interest and attorney's fees, and other and further relief as this Court deems just and equitable.

## JURISDICTION AND VENUE

1. This action arises out of violations of 42 U.S.C. § 1983 and the Americans with Disabilities Act.

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

3. Venue is proper in this Court under 28 U.S.C. §§ 1391(b) because all parties reside in the Middle District of Pennsylvania and the cause of action arose in the Middle District of Pennsylvania.

## PARTIES

4. Northeastern School District, ("NESD") is a public school district in York County, Pennsylvania located at 41 Harding Street, Manchester, PA 17345.

5. York County Regional Police Department is located in the County of York, Pennsylvania with offices located at 33 Oak Street, York, Pennsylvania 17402. York County offices are located at 45 N. George Street, York, PA 17401.

6. Defendant Della Archer ("Defendant Archer") is an adult female and upon information and belief, resides within York County in the Commonwealth of Pennsylvania.  Archer is employed by NESD as the Human Resource Director.

Archer is in the supervisory chain relative to the Plaintiff including being actively responsible for the termination of the Plaintiff.

7. Defendant Tim Damon ("Defendant Damon") is an adult individual residing within York County in the Commonwealth of Pennsylvania and who at all relevant times, served as Chief of Police for the York County Regional Police. All of Defendant Damon's actions or inactions were taken under color of state law. He is sued in his individual capacity.

8. Defendant Shaun Goodman ("Defendant Goodman") is an adult individual residing within York County in the Commonwealth of Pennsylvania and who at all relevant times, was employed as a school resource officer ("SRO") at NESD. All of Defendant Goodman's actions or inactions were taken under color of state law. He is sued in his individual capacity, and on behalf of the County of York (York County Regional Police Department) and the NESD, his employers.

9. Defendant Shaun Wilson ("Defendant Wilson") is an adult individual residing within York County in the Commonwealth of Pennsylvania and who at all relevant times, was employed by the York County Regional Police Department. All of Defendant Wilson's actions or inactions were taken under color of state law. He is sued in his individual capacity.

10. Defendant Ryan Brice ("Defendant Brice") is an adult individual residing within York County in the Commonwealth of Pennsylvania and who at all relevant

times, was employed as a school resource officer ("SRO") at NESD.  All of Defendant Brice's actions or inactions were taken under color of state law. He is sued in his individual capacity, and on behalf of the County of York (York County Regional Police Department) and the NESD, his employers.

11. Plaintiff is an adult female who, at all relevant times hereto, resided in the Commonwealth of Pennsylvania, York County, and was employed by NESD as a School Nurse.

## **BACKGROUND**

12. Plaintiff was a 46-year-old disabled female who was a Registered Nurse for NESD from September 1, 2020, until the date of her constructive discharge on September 28, 2023, at a rate of $52,000 annually and health benefits.

13. In 2020, Plaintiff came to NESD from the Red Lion School District. The Plaintiff was initially hired as a Health Assistant, and she worked under the discretion of the school Nurse to work between two schools (both with approx. 500 students and staff). Both nurses were brand new to the district and it was a difficult COVID year, with constant chaos. Both the Plaintiff and the other nurse were thrown into the system and safeguards were lacking as discovered by the Plaintiff and her colleagues. Both nurses made it through 2020 but at the end of the school year, the school nurse decided to resign.

14. When the Plaintiff heard about the school Nurse's resignation, she thought she would step up. NESD already knew the Plaintiff and she knew the school children well. The Plaintiff applied and was chosen. However, since she did not have a school nurse certification because she did not have her bachelor's degree, it was decided by the district that if she was willing to go back to school to get her BSN and certification, they would apply to the state for a temporary school nurse certification to perform in this position. So, she moved up into the position and they hired a new Health Assistant to take the Plaintiff's previous position. Again, this was peak COVID times, and the Plaintiff did not get much time to train her assistant before she had to be on her own. They worked together as a team to get through the school year (2021-2022).

15. The Plaintiff and her husband took a much-needed vacation trip to Tennessee over the President's Day weekend on February 16-21, 2023. With the Plaintiff being off, her assistant, Audrey LNU, would cover Spring Forge and a substitute agency nurse would cover Shallow Brook.

16. The Plaintiff returned to Shallow Brook on February 22, 2023, at approximately 7:40a.m. She opened her health room door, turned on the lights, put her stuff down on the table as she normally does. On that day she noticed the lock was on the counter and not placed through the cabinet doors as it should have been. She opened the cabinet doors and looked around to see if everything was in its place

and did not notice anything out of the ordinary. Because the Plaintiff had a Building Emergency Response Team ("BERT") meeting at 7:50a.m. which she was mandated to attend, she left her office after securing the lock and went to the meeting. There were or are no school policies or protocols for doing audits on medications under these circumstances.

17. On or about the end of the school day on March 13, 2023, it was discovered that a student's medication was missing. To ensure appropriate medication was available, the Plaintiff called the parent on March 14, 2023, to explain, and the parent said she would obtain a new refill. Later, the child's parent mentioned it was too early to obtain the refill, but it was not a problem to get enough to cover their child until a new refill could be obtained.

18. After that, Kristine Stover ("Stover") the principal at the school asked that the Plaintiff put a statement together of what had happened regarding the missing medications for the School Resource Officer. She asked if the parents had been informed and the Plaintiff stated that they had been. However, Stover stated that she wished the Plaintiff had not done that. The Plaintiff stated that it was her job to ensure the child had adequate medications.

19. Later that morning, the School Resource Officer ("SRO") according to information and belief, believed to be Defendant Brice came to the Plaintiff's office to investigate what had happened. However, when he entered the room, he

told the Plaintiff that his body camera was on, and he would be recording everything. This concerned the Plaintiff who expressed the same as she felt she was being accused of wrongdoing. Defendant Brice did not explain the Plaintiff's rights during this investigation into the missing medication.

20. The Plaintiff is disabled due to a severe migraine condition, anxiety, and panic disorder which substantially limits thinking, concentrating, breathing, and neurological systems. She will often experience hyperventilating, inability to think or concentrate clearly and breathing difficulties in stressful situations, and this often will result in migraine attacks and chest discomfort. The Plaintiff has had migraines attacks while employed at NESD and often sat in her office with the lights off to manage the stress and chronic pain. NESD and its agents were aware of her medical conditions and would observe this when they would come to her offices while she was experiencing the attacks.

21. Furthermore, in 2022, the NESD was placed on notice of the Plaintiff's disabilities when she was suddenly rushed to the hospital emergency room from work with the belief she was having a heart attack. Ellen Marquard, a colleague in nursing took her to the hospital and she later discovered and communicated to NESD that she experienced a panic attack. She also communicated that she had migraines and anxiety which were exacerbated by stress.

22. During the aforementioned interrogation of Defendant Brice, the Plaintiff answered truthfully and made Defendant Brice and NESD aware that she was concerned about the way she was being treated and felt she was being accused of something she did not do. She claimed this made her very anxious and she experienced migraines as a result of the incessant questioning and accusatory attitudes of Defendant Brice and the NESD administration including from Human Resource Director, Defendant Archer.

23. The Plaintiff also notified NESD and the SRO's that there had been substitutes at the school while she was away and that there had been changes with the cleaning crew and the representative for the cleaning company had informed the school that an employee was acting suspiciously. However, neither the SRO's or the defendant officers and/or defendant Chief of Police named herein ever investigated these individuals, based on information and belief.

24. The Plaintiff typed up her statement and submitted it to Stover as she was asked to do but ran it by her Union representative first. The next day, after Plaintiff turned in her statement at the end of the day, she was brought into the conference room and advised that she would be placed on a paid suspension for an unknown period pending a criminal and District investigation. The Plaintiff was then humiliated and disrespected when she was escorted out of the building by Stover

in front of staff, her students, and bus drivers as it was the very end of the day around 3:15p.m. This caused the Plaintiff extreme emotional distress.

25. On or about April 27, 2023, the Plaintiff was again interrogated by Officer Goodman and Officer Shaun Wilson when she was called to come into the police department at the request, and in conjunction with, Defendant Archer and NESD whom upon information and belief, had met, discussed, and agreed that the Plaintiff should be interrogated again. Furthermore, upon information and belief, Defendant Archer, Stover, and the Defendant SRO's discussed whether there were any records of the Plaintiff's employment, personnel files, medical files and student medical files which could be accessed and NESD, Defendant Archer and the SRO's engaged in searching the Plaintiff's computer files, online records and office records within her filing apparatus and then confiscating those records without her authority, release(s) or her consent.

26. When the Plaintiff arrived at the police department, believing it was to be a discussion of their investigative findings, the Plaintiff instead was taken into custody, read her Miranda Rights, and placed under arrest. The Plaintiff was then held against her will, without representation, for an unreasonable period of time ranging into many hours, unable to leave and interrogated.

27. The Plaintiff was questioned about her activities and the missing medication again. When she told them she did not take the medications, the defendant

officers asked if her assistant, Audrey, had taken the medications. She told them no, that she did not believe she would do that, stating "…why would they both risk their hard-earned nursing licenses to do something so stupid…"

28. Then the interrogation began to become more oppressive causing the Plaintiff to experience anxiety, panic, and migraines which she communicated to the defendant officers. Instead of seeking medical treatment for Plaintiff, the defendant officers then began pulling out personnel, medical and student records from NESD which were private, and protected, and they began to ask questions about her activities as a nurse in 2021 and 2022. The officers then began to accuse her of stealing the missing medication because they deemed, she must have been a busy mom with a disabled child and needed them for herself. They would not have been able to discern many of the things they discussed without having access to both her personal and medical files, or private student files she kept as their nurse. Again, the Plaintiff insisted she would never do such a thing as she had been a long-standing nurse for multiple school systems.

29. The defendant officers had discovered the Plaintiff's history and medical information and that of students by looking at the personnel and medical records which had been given to them by NESD and Defendant Archer when they, as well as other agents of NESD, went into the Plaintiff's electronic and hard copy file and records without her consent or knowledge in an effort to allow the SRO's

and the police department to use the records to harass and undermine the Plaintiff in an effort to charge her with crimes.

30. The Plaintiff could not believe her private records and records involving her schedules, personal and family medical files and confidential nursing notes were being given to the SRO's so that they could attempt to use them against her or try to get her to agree she had done something wrong when she had not.

31. Furthermore, the Plaintiff believed she could not leave and was terrified about being put in jail for something she had not done. Furthermore, she had been arrested without any basis, probable cause, or warrant. After they had kept her for hours trying to get her to confess, they finally agreed to let her leave.

32. Defendant officers Goodman, Brice, and Wilson could not find any basis for charging the Plaintiff and neither could the District Attorney's office when the matter was turned over to them.

33. The Plaintiff also avers that her medical records were reviewed by parties without a right or need to know at NESD and she was determined unfit to continue working for this reason. NESD and Defendant Archer began to conspire and orchestrate to undermine the Plaintiff's position, despite not having any evidence of wrongdoing. In doing so, they created a subjectively and objectively hostile work environment for the Plaintiff in an effort to force her to resign.

34. Furthermore, as previously noted, the Plaintiff attempted to bring information to NESD and the police including defendant officer Goodman regarding the substitute being responsible for the lock being off the cabinet and the fact that a new cleaning staff had taken over and cleaning attendant(s) could have had access to the cabinet while she was away. Once more, that no policies of NESD had been violated by her as no policies for audits under these circumstances existed.

35. Yet, again, the defendant officers, their Chief, and/or NESD never investigated whether these individuals had taken the medication. Furthermore, according to information and belief, neither defendant officer Goodman, Wilson or NESD ever investigated the substitute nurse or her actions while the Plaintiff was on vacation to determine her whereabouts and who left the lock off the cabinet.

36. Once more, the Plaintiff was deeply concerned and avers that it is her belief that defendant officers Goodman and Wilson as well as defendant Archer and other staff at NESD wrongfully accessed both her personnel, medical and scheduling records as well as student records in violation of the Family Education and privacy Rights Act ("FERPA") and the Health Insurance Portability and Accountability Act ("HIPAA") as well as policies of NESD which require the notification of employees when their records are being accessed.

37. The Plaintiff was held against her will by officials of NESD as well as by the York Regional Police Department without justification and with exculpatory

information resulting in the false imprisonment and false arrest of the Plaintiff. This caused the Plaintiff severe emotional distress, humiliation, panic, migraines and significant fright, sleeplessness, fatigue, and loss of reputation.

38. The Plaintiff's private records, as more fully described above, were confiscated without her consent, approval authorization or agreement, violating her right to privacy and causing the Plaintiff severe emotional distress, humiliation, panic, migraines and significant fright, sleeplessness, fatigue, and loss of reputation.

39. The Plaintiff was suspended without pay and told to seek out the employee assistance program for counseling after it was concluded that there were no charges that would be filed against her and NESD began a concerted effort initiated by defendant Archer to force the Plaintiff to resign. The Plaintiff was thereafter, despite her insistence of innocence and feeling harassed by NESD and defendant SRO's and the York Regional Police Department, was further harassed and threatened with the loss of her nursing license and the reporting of alleged but unverified accusations which defamed her and caused the Plaintiff severe emotional distress, humiliation, panic, migraines and significant fright, sleeplessness, fatigue, and loss of reputation.

40. Neither NESD nor defendant officers Goodman, Brice, Wilson, and the York Regional Police Department conducted a good faith investigation of this matter. Further, NESD feigned an investigation and a Loudermill hearing in an effort to

deceive the Plaintiff and others regarding having conducted an appropriate inquiry.

41. The actions of the defendant officers and Chief were done with the tacit approval and conspiracy of the NESD, and defendant Archer.

42. NESD violated the Plaintiffs constitutional rights by failing to provide due process, breaching her nursing contract with them, and violating her privacy. The Plaintiff and her colleagues repeatedly discussed the need for more protection for student medications and safety, but the NESD disregarded the information.

43. Once more, an employee's rights to privacy are clear from NESD policies where an employee is to be notified if their records are being reviewed by others. Further, student/nurse notes are forbidden from exposure and review without the mutual consent of all parties involved.

44. The Plaintiff was constructively terminated on the date of her unpaid suspension or on or before September 28, 2023.

45. The Plaintiff avers that she is disabled due to migraines, anxiety and panic disorder which substantially impact the major life activities of neurological systems of the body, chronic pain, thinking, and concentrating as formerly noted.

46. Therefore, Plaintiff is entitled to all appropriate remedies under ADA for disability-based and disability-privacy based hostile work environment and retaliation, including but not limited to monetary relief, benefits, pain, suffering

and humiliation as well as punitive relief and any other remedy or relief proscribed under law.

47. Defendants' refused to properly investigate the lost medication issue and allowed and tacitly approved of harassment and hostile work environment, even after she notified them of the harassment, ultimately retaliating against the Plaintiff subsequently forcing the Plaintiff from a job that she loved in retaliation for seeking protected status.

48. These claims fall under a continuing violation theory.

49. NESD is liable for the actions and inaction if its agents including but not limited to the SRO's and defendant Archer under a theory of *Respondeat Superior*.

50. The Plaintiff was forced from her job and constructively discharged on or about September 28, 2023.

51. The Plaintiff filed her administrative claims with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") on March 26, 2024, with a Charge number of 530-2024-04598. A Right to Sue letter was issued shortly thereafter on April 4, 2024. See **Exhibit A**. The Plaintiff's claims under the PHRC have not yet been exhausted but she will reserve the right to amend her pleadings once they have been exhausted.

52. NESD failed to properly train its employees to follow its policies with respect to an employee's right to privacy and right to be free from workplace harassment and retaliation. Thus, NESD tacitly validated and/or acquiesced to such policies and customs which were violated by the Defendants.

53. Further, NESD, failed to adopt policies or customs that protect an employee's privacy rights and rights to be free from harassment and retaliation, and as such followed a custom or customs which validated and/or acquiesced to an invasion and unlawful search of the Plaintiff's privacy, failure to notify, as well as unlawful bullying, harassment, and retaliation.

54. NESD policy (348) states *inter alia*, that the "…Board strives to provide a *safe*, positive working climate for its administrative, professional and support employees. Therefore, it shall be the policy of the district to maintain an employment environment in which harassment in any form is not tolerated." (emphasis added).

55. Further, the "…Board prohibits all forms of unlawful harassment of employees… by all district staff members..." and the "…Board encourages employees and third parties who have been harassed to promptly report such incidents to the designated administrators."

56. Code 348 defines harassment in pertinent part as: consisting of "…verbal, written, graphic or physical conduct relating to an

individual's…disability…when such conduct is (1) sufficiently severe, persistent or pervasive that it affects an individual's ability to perform job functions or creates an intimidating, threatening or abusive work environment. (2) Has the purpose or effect of substantially or unreasonably interfering with an individual's work performance. (3) Otherwise adversely affects an individual's employment opportunities.

57. Further, Code 348 states that in order to maintain a work environment that discourages and prohibits unlawful harassment, the Board designates the Superintendent as the district's Compliance Officer. (Emphasis added).

58. The code also states that a complaint is to be taken to the principal or if the principal is the subject of the complaint, then to the "compliance officer." The Plaintiff informed Stover of the treatment and her concerns that it cease.

59. Following the report of the complainant, an investigation is to be conducted and NESD shall conduct an adequate, reliable, and impartial investigation and shall provide the opportunity for each party to present witnesses and other evidence. Something NESD failed to do or did not conduct out of recklessness or malice.

60. The investigation shall consist of individual interviews with the complainant, the accused, and others with knowledge relative to the incident. The investigator shall also evaluate any other information and materials relevant to the investigation. Further, it states the "obligation to conduct this investigation shall

not be negated by the fact that a criminal investigation of the incident is pending or has been concluded." Further, an investigative report is to be provided and NESD is to take prompt, corrective action to ensure the conduct ceases and prevent the reoccurrence.

61. Once more, the district shall inform the complainant of the action taken and copies of the report should be provided to the complainant under appeal.

62. Further, NESD and the individual Defendants failed to execute the anti-harassment, safety, and privacy policies at the school where the Plaintiff works by allowing serious intimidations and harassment to continue unabated or un-remedied causing and/or inflicting injury and exacerbations of those injuries upon the person of the Plaintiff.

63. Further, NESD failed to properly train its employees, including the individually named Defendants, to follow its policies with respect to anti-harassment policies.

64. Thus, NESD tacitly validated and/or acquiesced to such failure to follow policies and customs permitting the individual Defendants to discipline, punish, abuse and harass the Plaintiff for and due to her reports of invasions of her privacy, harassment, unsafe environments, failure to notice, and for reporting an ongoing hostile work environment.

65. Further, NESD failed to adopt policies or customs that protect an employee's privacy, and as such followed a custom or customs which validated and/or

acquiesced to repeated attempts to intimidate the Plaintiff through the use of illegitimate seizure of her records as formerly noted, causing Plaintiff harm and an exacerbation of her underlying health and mental health conditions.

66. Furthermore, NESD Policy (348) states that the "...Board strives to provide a safe, positive working climate for its employees. Therefore, it shall be the policy of the district to maintain an employment environment in which harassment in any form is not tolerated."

67. Once more, the "Board prohibits all forms of unlawful harassment of employees and third parties by all district students and staff members, contracted individuals, vendors, volunteers, and third parties in the schools. The Board encourages employees and third parties who have been harassed to promptly report such incidents to the designated administrators."

68. Further, the "...Board directs that complaints of harassment shall be investigated promptly, and corrective action be taken when allegations are substantiated. Confidentiality of all parties shall be maintained, consistent with the district's legal and investigative obligations. No reprisals nor retaliation shall occur as a result of good faith charges of harassment." Such anti-harassment policy includes in pertinent part harassment based upon, *disability*."

69. Further, in "...order to maintain a work environment that discourages and prohibits unlawful harassment, the Board designates the Superintendent or

designee as the district's Compliance Officer." "The Compliance Officer shall publish and disseminate this policy and the complaint procedure at least annually to students, parents/guardians, employees, independent contractors, vendors, and the public. The publication shall include the position, office address and telephone number of the Compliance Officer."

70. "The administration shall be responsible to provide training for…employees regarding all aspects of unlawful harassment."

71. "Each staff member shall be responsible to maintain a working environment free from all forms of unlawful harassment."

72. Critically, the individually named Defendants, with knowledge of the aforementioned policies acquiesced and took action to harm the Plaintiff by failing to adhere to the anti-harassment, safety, notification and privacy policies instead taking action to violate said policies creating a unsafe and hostile environment specifically for the Plaintiff, as well as her children, and further causing a hostile working environment as more fully described above and below on the basis of disability.

73. Once more, NESD sanctioned and/or tolerated the harassment of the Plaintiff and the hostile working conditions as well as tacitly approving of the inadequate supervision, discipline, discrimination, and derivation of the Plaintiff's rights both under its own policies and under the law.

74. Because of the injuries she sustained during the episodes of interrogation and harassment herein, the Plaintiff was and is unable to return to normalcy in her role as a nurse due to ongoing panic and fear.

75. At the time of her separation as a school nurse she was earning approximately $52,000.00 as a teacher with the NESD. She had multiple years of nursing experience in the school system at the time of her detention and arrest. Because of the individual Defendants' actions, the Plaintiff has been diagnosed with exacerbation of her physical and mental health conditions. The Plaintiff now exhibits severe and debilitating anxiety symptoms as a result of the traumatic experiences that she suffered because of the actions or inactions of the Defendants. The incident caused her to suffer extreme embarrassment and humiliation in front of her students, co-workers, and the administrative staff. The Plaintiff was subjected to an illegal search of her records pursuant to a non-existent or invalid search warrant. Further, the Plaintiff has had her reputation damaged, and she has been stigmatized.

76. There was no probable cause to charge the Plaintiff with any crimes, nor to detain and arrest her. The Plaintiff was seized in violation of the Fourth Amendment.

77. The Defendants acted with deliberate indifference to the Plaintiff's Fourth Amendment and Fourteenth Amendment due process rights, denying her due process by ignoring her obvious need for medical attention while she was being

detained and arrested with her liberty also being deprived by the officers for an improper purpose – to continue to interrogate her.

78. The Defendant police officers did not have the right to confine and detain the Plaintiff. Further, the defendants had an affirmative duty to investigate other persons or entities to seek exculpatory evidence when they had knowledge of his possible existence.

79. The Plaintiff was illegally detained due to there being no probable cause and pursuant to an invalid execution of a search for the reasons discussed above, and/or pursuant to a search warrant that was not valid.

80. The search of the Plaintiff's office, computer, or files was illegal having no probable cause and/or conducted pursuant to an invalid search warrant not supported by probable cause.

81. Pennsylvania Rule of Criminal Procedure 203 sets forth the requirements for issuance of a search warrant in Pennsylvania. Rule 203 provides, in relevant part, as follows:

> (B) No search warrant shall be issued but upon probable cause supported by one or more affidavits sworn to before the issuing authority in person or using advanced communication technology. The issuing authority, in determining whether probable cause has been established, may not consider any evidence outside the affidavits.

Pa.R.Crim.P 203

82. In Pennsylvania, the question of whether probable cause exists for the issuance of a search warrant must be answered according to the "totality of the circumstances" test articulated in *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (1985) and its progeny which incorporate the reasoning of the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L. Ed. 2d 527 (1983).

83. In order to discourage general or exploratory searches, all search warrants must name or describe with particularity the property to be seized and the person or place to be searched. U.S. Const. Amend. IV; Pa. Const. Art. I § 8; Pa.R.Crim.P 205(2), (3); *Commonwealth v. Rega*, 593 Pa. 659, 933 A.2d 997 (2007), cert. denied, 128 S.Ct. 1879 (U.S. 2008). Further, because the Fourth Amendment requires the search warrant to state with particularity the item to be seized and thus prevents the seizure of one thing when a warrant describes another, a warrant is unconstitutional under the Fourth Amendment if it is broader than can be justified by the probable cause on which the warrant is based. *Commonwealth v. Santner*, 308 Pa. Super. 67, 454 A.2d 24, 26 (1982).

84. In addition, for a search warrant to be constitutionally valid, the issuing authority must decide that probable cause exists at the time of its issuance and make this determination on facts within the four corners of the supporting affidavit and closely related in time to the date of the warrant. *Commonwealth v. Murphy*, 916

A.2d 679 (PA. Super. 2007); *Commonwealth v. Eazer*, 455 Pa. 320, 312 A.2d 398 (1973); *Commonwealth v. Tolbert*, 492 Pa. 424 A.2d 1342 (1981). In determining staleness, courts look to the nature and quantity of items sought, the time elapsed, the ease with which the items can be disposed of, and the continuing nature of the illicit enterprise.

85. In this case, where no warrant existed for an arrest or search, any anonymous sources, coupled with both the lack of any information about their reliability and the utter absence of any corroboration by any other sources caused any possible Affidavit to fall short of the probable cause required for a lawful search warrant, if such a warrant exists. As such, the lack of specificity contained within the four corners of the affidavit should have resulted in the Application being denied.

86. Furthermore, the Plaintiff was subjected to false imprisonment because of the SRO's and Defendant Damon, Goodman, Wilson, and Brice's actions confining her on two (2) occasions, taking her into custody, reading her Miranda rights, and holding her even though she was obviously and visibly ill.

87. The Plaintiff's Fourth Amendment rights were violated by the seizure of her records without a warrant and without probable cause.

88. As a result of the Defendants' actions or omissions described above, the Plaintiff has suffered damages, injury to her reputation, embarrassment, humiliation,

emotional and subsequent physical and mental harm, for which she requires continuing treatment.

89. Plaintiff alleges that the individual defendants acted intentionally or recklessly in violating their constitutional rights.

90. Furthermore, the parties had a contract which contract between the parties is a valid and legally binding agreement between the Plaintiff and NESD (see attached **Exhibit B**).

91. The temporary contract contains provisions to satisfactorily serve the School District for a period of three (3) years and then a permanent contract would enter into with the Plaintiff.

92. NESD breached the contract by failing to provide the Plaintiff with adequate policies to assist in the execution of her duties, namely, to assist her and the medical staff to keep student medications safe and to provide access to policies which would protect the patient's safety and the reputation of the Plaintiff by enforcing a policy of medication audits, more stringent medication oversight, and a better and safer location to keep and protect the medications from access to or by third parties.

93. NESD breached the contract by forcing the Plaintiff from her position without cause although she was performing satisfactory and proficient rating under the contract (see attached **Exhibit C**).

94. NESD breached the contract by failing to provide appropriate and transparent hearings under the contract when conducting Loudermill hearings or meetings under and pursuant to her contract.

95. NESD breached the contract by failing to follow its progressive disciplinary policies but instead immediately suspending and forcing the Plaintiff outside the perimeters of the policy and forcing her resignation without sufficient cause.

96. NESD breached the contract by constructively discharging the Plaintiff's employment without cause.

## COUNT I
## FOURTH AMENDMENT/FOURTEENTH AMENDMENT/ FALSE ARREST/FALSE IMPRISONMENT
## (42 U.S.C. §1983)

97. Plaintiff incorporates herein the previous averments as if fully set forth.

98. To state a claim for false arrest under the Fourth Amendment, a Plaintiff must establish: (1) that there was an arrest; (2) that the arrest was made without probable cause.

99. Where the police lack probable cause to make an arrest, the arrestee has the claim under § 1983 for false imprisonment based on a detention pursuant to that arrest. *See Groman v. Twp. of Manalapan*, 47 F. 3rd 628, 634 (3d Cir. 1995).

100. Defendants Damon, Goodman, Wilson, and Brice illegally detained the Plaintiff at the police department as afore stated herein. As a result of the actions

of these defendants the Plaintiff knew that she was not free to walk away from the Defendants. She was deprived of her liberty without due process of law.

101.   At the time of the detention, probable cause did not exist to arrest the Plaintiff or to hold her against her will.

102.   At the time of the detention, reasonable suspicion did not exist to detain the Plaintiff for any lawful reason.

103.   The Plaintiff was detained for an unreasonable length of time, under unreasonable circumstances and for an improper purpose which was to continuously interrogate her as to the missing medication that she did not know what had happened to.

104.   The defendant police officers, chief and the district attorney's office ultimately concluded that search ultimately conducted by the defendant police officers concluded no charges would be filed against the Plaintiff.

105.   The search conducted by the defendant police officers of the Plaintiff's records was unreasonable in its execution, in addition to being warrantless or based on an invalid search warrant.

106.   The Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments were violated by the actions of the defendant chief and officers named in this complaint defendant Archer.

107.   As a direct and proximate result of these Defendants' conduct, the Plaintiff has suffered and will continue to suffer embarrassment, humiliation, emotional distress, loss of reputation, physical and psychological injury, pain and suffering and financial harm, some, or all of which may be permanent.

## COUNT II - FOURTH AMENDMENT – ILLEGAL SEARCH & SEIZURE

108.   Plaintiff incorporates herein the previous averments as if fully set forth.

109.   For the reasons stated above, the warrantless search of the Plaintiff's files executed at the Plaintiff's place of employment while she was suspended and without her knowledge, violated her Fourth Amendment rights.

110.   Further, if a warrant existed, she had no knowledge of the same and any warrant was defective and invalid under the law.

111.   The searches conducted by the Defendants were illegal and made in violation of the Fourth Amendment rights of Plaintiff, who had a right to secure in their persons, house, papers, and effects from unreasonable searches and seizures.

112.   As a direct and proximate result of the conduct of Defendants the Plaintiff has suffered and will continue to suffer embarrassment, humiliation, emotional distress, psychological injury, pain and suffering, loss of reputation, and financial harm, some, or all of which may be permanent.

## COUNT III – CONSPIRACY

113.  Plaintiff incorporates herein the previous averments as if fully set forth.

114.  To state a §1983 conspiracy claim, a plaintiff must allege: (1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy.

115.  All of the Co-defendants agreed and acted together to intentionally detain, arrest, and seize the Plaintiff unlawfully.

116.  All of the Co-defendants agreed and acted together to intentionally search the Plaintiff's files and seize the Plaintiff's records, unlawfully.

117.  The Co-defendants acted in combination with each other to illegally arrest, and to search and seize the Plaintiff's records, as more fully described above, to invade her privacy thereby violating her Fourteenth Amendment Due Process and Fourth Amendment rights.

118.  These actions and inactions were undertaken jointly by all of the Co-defendants under color of state law in violation of the Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments to the U.S. Constitution.

119.  As a direct and proximate result of all of the individual Defendants' conspiracy, the Plaintiff has suffered and will continue to suffer embarrassment, humiliation, severe emotional distress, loss of reputation, serious psychological

injury, pain and suffering and financial harm, some, or all of which may be permanent.

## COUNT IV
## ADA HOSTILE WORK ENVIRONMENT
### Plaintiff v NESD (Only)

120.    Plaintiff incorporates herein the previous averments as if fully set forth.

121.   The Plaintiff avers that she is a qualified individual with a disability under the ADA due to her aforenoted disabilities and Defendants' notice of the same. Additionally, the Plaintiff has been under a physician's care for her disabilities since she was diagnosed.

122.   The Plaintiff was subject to unwelcome harassment after she gave notice that she was being harassed while at work under the guise that she had stolen a student's medication and after her reports of the defendants' bullying.

123.    Further, Plaintiff was subjected to further humiliation and harassment when NESD failed to correct or remedy the ongoing harassment by defendants.

124.   Further, after she had made a statement in good faith regarding the Defendants' harassment, she was intimidated by school officials and SRO's.

125.   Further, Plaintiff was subjected to a hostile work environment because she was repeatedly mistreated when agents of the Defendants intentionally, negatively, and callously communicated within the school about the Plaintiff's health issues, her private life and alleged theft.

126.   Further, the harassment was sufficiently severe or pervasive as to alter the conditions of Plaintiff's employment and to create an abusive and hostile working environment.

127.   The Defendants knew, or reasonably should have known of the harassment, and failed to take prompt, effective remedial action, instead taking adverse action against the Plaintiff, further disciplining and berating her despite her conditions.

128.   The fact that the Plaintiff's supervisor, Archer, was a perpetrator of the harassment and discrimination entitles the Plaintiff to strict liability against NESD.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to ADA and any other applicable statutory remedies including but not limited to monetary relief for the Plaintiff, including as applicable compensatory damages including wage loss, pain and suffering and all reasonable attorney's fees and costs of litigation.

## COUNT V
## ADA RETALIATION
## Plaintiff v NESD (Only)

129.   Plaintiff incorporates herein the previous averments as if fully set forth.

130.   The ADA prohibits retaliation in the workplace against employees who have, *inter alia*, given notice of their disabilities, sought assistance for an accommodation in the workplace, or to have otherwise opposed practices made unlawful under the law.

131. The Plaintiff's notification of her disabilities and/or requests for an accommodation in the workplace constitute "protected activity" pursuant to state and federal law. Further, Plaintiff repeatedly opposed NESD's practice of harassment and bullying.

132. NESD retaliated against the Plaintiff on account of her protected activity as more fully noted herein. The Plaintiff therefore avers that NESD's purported basis to discipline, suspend and force her to resign (e.g. that she violated school policies) is false and erroneous as the real reason for her discipline is due to her aforenoted claims of harassment based on her disabilities.

133. As a result of all of the above, the Plaintiff avers that NESD retaliated against her on account of her protected activity by imposing disciplinary measures, suspension, intimidation for her reports of wrongdoing and forced resignation which is a constructive discharge.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to the ADA and any other applicable statutory remedies including but not limited to withdrawal of federal grants, monetary relief for the plaintiff, including as applicable compensatory damages and all reasonable attorney's fees and costs.

## COUNT VI
## BREACH OF CONTRACT

134.   Plaintiff incorporates herein the previous averments as if fully set forth.

135.   The contract between the parties is a valid and legally binding agreement between the Plaintiff and NESD (see attached **Exhibit B**).

136.   The temporary contract contains provisions to satisfactorily serve the School District for a period of three (3) years and then a permanent contract would enter into with the Plaintiff.

137.   NESD breached the contract by failing to provide the Plaintiff with adequate policies to assist in the execution of her duties, namely, to assist her and the medical staff to keep student medications safe and to provide access to policies which would protect the patient's safety and the reputation of the Plaintiff by enforcing a policy of medication audits, more stringent medication oversight, and a better and safer location to keep and protect the medications from access to or by third parties.

138.   NESD breached the contract by forcing the Plaintiff from her position without cause although she was performing satisfactory and proficient rating under the contract (see attached **Exhibit C**).

139.   NESD breached the contract by failing to provide appropriate and transparent hearings under the contract when conducting Loudermill hearings or meetings under and pursuant to her contract.

140.   NESD breached the contract by failing to follow its progressive disciplinary policies but instead immediately suspending and forcing the Plaintiff outside the perimeters of the policy and forcing her resignation without sufficient cause.

141.   NESD breached the contract by constructively discharging the Plaintiff's employment without cause.

142.   The failure to properly perform the contract has caused the Plaintiff's professional reputation to be harmed by preventing her from properly doing her job and by causing serious damage to her career in educational nursing.

143.   At the time of constructive discharge NESD owed the Plaintiff approximately one year's salary and benefits.

144.   As a direct, proximate, and foreseeable result of NESD's breaches of its obligations under the contract the Plaintiff has been damaged by loss of salary, benefits payment, consequential damages resulting and flowing from the loss of her contract and benefits to which the Plaintiff was entitled to under the contract.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against NESD and order the Defendant to pay Back wages as will be more fully provided at trial and benefits which amount the employer has in its records and possession and which will be more fully developed through discovery and at trial; additionally that which he is entitled under contract damages and grant such additional relief as this Court deems just and appropriate under the circumstances.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays that the Court grant relief on his Causes of Action as specified below.

145.    The Plaintiff prays that the Court award monetary relief as follows:

146.    On his Causes of Action, order Defendants to pay equitable monetary relief and compensatory pain and suffering damages including punitive relief to the Plaintiff as are asserted under the ADA in an amount to be proven at trial.

147.    On her Causes of Action, order Defendants to pay equitable monetary relief and compensatory pain, suffering, reputational and punitive damages to the Plaintiff as are asserted as applicable, under her constitutional claims in an amount to be proven at trial.

148.    On her contract, NESD to pay contract damages and consequential costs.

149.    The Plaintiff prays that the Court award her costs, expenses, and attorneys' fees under statutory law, as follows:

150.    By determining that the Plaintiff is a prevailing party on her Statutory Causes of Action and thereupon awarding the Plaintiff her reasonable costs, expenses, and attorneys' fees incurred in bringing this action under applicable statutory language.

151.    The Plaintiff prays that the Court award further monetary relief as follows:

152.    The Plaintiff prays that the Court order to pay pre- and post-judgment interest in all monetary amounts awarded in this action, as applicable and provided by law.

153.    The Plaintiff prays that the Court retain jurisdiction of this case for a sufficient period to assure that has fully complied with the remedies sought by the Plaintiff.

154.    The Plaintiff prays that the Court award, where applicable, such other and further relief as this Court deems equitable and just.

<u>**DEMAND FOR A JURY TRIAL**</u>

Plaintiff hereby respectfully demands trial by jury on all counts so triable.

DATED this the <u>25th</u> day of May 2024.

<u>*By: /s/ Jeremy A. Donham, Esquire*</u>
Jeremy Donham, (206980)
**DONHAM LAW**
714 Venture Drive, Ste. 144
Morgantown, West Virginia 26508
717.881.7855 (phone)
J.Donham@Donhamlaw.com

Charles J. Hobbs (209321)
**THE HOBBS LAW FIRM**
256 E. Market Street
York, PA 17403
(717) 793-2398 (Phone)
Email: chobbs@thehobbslawfirm.com